[Crim. No. 18553. In Bank. Apr. 14, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY DONALD RUSTER, Defendant and Appellant.

**COUNSEL**

Jimmie E. Tinsley, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CLARK, J.**—Defendant appeals from judgment entered on jury verdicts convicting him of 1 count of grant theft (Pen. Code, §§ 484, 487, subd. 1) and 14 counts of forgery (Pen. Code, § 470) based on unemployment insurance fraud. He was sentenced to state prison for the term prescribed by law, the terms on the forgery counts to run concurrently with the grand theft term. The principal question presented by this appeal is whether section 2101 of the Unemployment Insurance Code, classifying as a misdemeanor fraudulent representation to obtain unemployment

benefits, is a special statute precluding prosecution of such fraud under the general theft and forgery statutes. The judgment must be reversed.

Defendant submitted a questionnaire establishing his eligibility for unemployment benefits to an employee of the Employment Development Department (EDD); he signed the questionnaire "Gary Roster," social security number 549940478. Receiving a pay certification card for $65, he signed the same name on that form and presented it to a cashier in the EDD office. A supervisor then noticed that defendant resembled a photograph posted on the office bulletin board of a man wanted by the department for questioning concerning possible violations of the Unemployment Insurance Code. The supervisor instructed the cashier to stall defendant until an EDD investigator could be summoned.

While defendant was still at the cashier's window, but after he received the $65, an investigator approached defendant and identified himself. Defendant ran toward an exit, but was apprehended. He then produced identification indicating he was Gary Ruster, social security number 564560708. Subsequent searches made with his consent or pursuant to warrant produced documents indicating petitioner had received thirteen $65 unemployment insurance payments using the name "Gary Roster" between May and September of 1971, and had received $1,400 in unemployment insurance benefits by using a false social security number between April of 1970 and August of 1971. His defense at trial was diminished capacity.

### The Special Statute Question

Prosecution under a general statute is precluded by a special statute when the general statute covers the same matter as, and thus conflicts with, the special statute. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580]; *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].) However, a special statute does not supplant a general statute unless *all* of the elements of the general statute are included in the special statute (See *People* v. *Gilbert, supra,* 1 Cal.3d at p. 480; *People* v. *Phillips* (1966) 64 Cal.2d 574, 582 [51 Cal.Rptr. 255, 414 P.2d 353]; *People* v. *Barrowclough* (1974) 39 Cal.App.3d 50, 55 [113 Cal.Rptr. 852].)

(a)  ▮▮▮  *Unemployment Insurance Fraud Cannot Be Prosecuted Under Section 484 of the Penal Code*

Section 484 of the Penal Code provides in pertinent part: "Every person who shall . . . knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money . . . is guilty of theft." Theft of more than $200 in money constitutes grand theft. (Pen. Code, § 487, subd. 1.)

Section 2101 of the Unemployment Insurance Code provides in pertinent part: "It is a misdemeanor to willfully make a false statement or representation or knowingly fail to disclose a material fact *to obtain....* any benefit or payment . . . ." (Italics added.)

The People contend that section 2101 does not include one of the elements of section 484 and, therefore, does not supplant it. The theft statute requires that the fraud victim actually "part with value." (See *People* v. *Gilbert, supra,* 1 Cal.3d at p. 480; *People* v. *Phillips, supra,* 64 Cal.2d at p. 582.) Relying on *People* v. *Lustman* (1970) 13 Cal.App.3d 278 [91 Cal.Rptr. 548], the People contend section 2101 has no such requirement, but rather, the words "to obtain" limit the application of the statute to *attempted* unemployment insurance fraud.

In concluding that section 2101 does not preclude prosecution of unemployment insurance fraud under the general theft statute when such fraud is consummated, the *Lustman* court misread the precedent upon which it relied. *Lustman* construed *People* v. *Armstrong* (1950) 100 Cal.App.2d Supp. 852 [224 P.2d 490] and *People* v. *Haydon* (1951) 106 Cal.App.2d 105 [234 P.2d 720] as holding that the predecessor to section 2101 (Unemp. Ins. Act, § 101, subd. (a) [Stats. 1935, p. 1226; Deering's Gen. Laws, Act 8780d]) was limited to attempts.[1]

In *Armstrong,* the defendant was convicted of both unemployment insurance fraud and theft based on the same misconduct. He contended that the offense described by section 101, subdivision (a), was necessarily included within theft and, therefore, that he was being punished twice for the same offense. The Court of Appeal found merit in this contention, observing that "the corpus delicti [of unemployment insurance fraud] is identical with *attempted* theft by false pretenses." (100

---

[1]Section 101 provided in pertinent part: "It is a misdemeanor to: (a) Wilfully make a false statement or representation or knowingly fail to disclose a material fact to obtain ... any benefit or payment ...."

Cal.App.2d Supp. at p. 858, italics added.) However, because it was not confronted with the question presented here, the *Armstrong* court had no occasion to consider whether section 101, subdivision (a), while requiring only an attempt, might also conver consummated fraud. The question presented in *Haydon* was whether section 101, subdivision (a), was a special statute precluding prosecution of unemployment insurance fraud under section 72 of the Penal Code. Section 72 then provided in pertinent part: "Every person who, with intent to defraud, presents for allowance or for payment to any state board . . . any false or fraudulent claim . . . is guilty of a felony." The Court of Appeal held that section 72 was supplanted by section 101, subdivision (a). In reaching this conclusion, the court was not required to, and did not, determine whether section 101, subdivision (a), applied to completed, as well as attempted, fraud.

Statutes are to be construed so as to effect the intent of the Legislature. (Code Civ. Proc., § 1859; *Mercer v. Perez* (1968) 68 Cal.2d 104, 112 [65 Cal.Rptr. 315, 436 P.2d 315]; *Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) ██ To ascertain legislative intent, the court should construe a statute with reference to the whole system of law of which it is a part. (*Select Base Materials v. Board of Equal., supra*; *Stafford v. L. A. etc. Retirement Board* (1954) 42 Cal.2d 795, 799 [270 P.2d 12]; *County of Los Angeles v. Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526].) ██ When this principle of statutory construction is followed here, it becomes clear that section 2101 applies to completed, as well as attempted, unemployment insurance fraud and, therefore, that it precludes prosecution of such fraud under section 484.

Section 1263, subdivision (c), of the Unemployment Insurance Code provides: "The department shall, effective upon the date of the filing of a criminal complaint against an individual prosecuted under Section 2101, suspend the payment of benefits to the individual." This section makes it clear that section 2101 was intended to apply to individuals who succeed in fraudulently obtaining unemployment benefits, as well as those who merely attempt to do so; if section 2101 applied only to attempts, it would be unnecessary to suspend payments of benefits.

This conclusion is reinforced by other sections in the same division. Section 1375 provides in pertinent part that "[a]ny person who is overpaid any amount as benefits . . . is liable for the amount overpaid unless: (a) The overpayment was not due to fraud, misrepresentation or wilful nondisclosure on the part of the recipient . . . ." Section 2113

provides that in lieu of filing a criminal complaint, the department may accept restitution of overpayment from one who has "willfully made a false statement or representation . . . to obtain or increase any benefit." Both sections obviously contemplate that overpayments may actually be made as a result of violations of section 2101.

Finally, section 2113 further provides that no one who has been convicted of violating section 2101 within the preceding three years may be offered an opportunity to restore benefits in lieu of criminal prosecution. If section 2101 applies only to attempts, then one who succeeded in defrauding the department and, thus, was convicted of theft would be eligible within three years to avoid a new prosecution under section 2101 by restoring benefits under section 2113, while one who had previously merely attempted to defraud the department would not be eligible for such treatment. That such a distinction would be unreasonable further demonstrates that section 2101 applies to completed, as well as attempted, fraud.

Our conclusion that section 2101 precludes prosecution of unemployment insurance fraud under section 484 of the Penal Code was anticipated in *People* v. *Bogart* (1970) 7 Cal.App.3d 257, 266 [86 Cal.Rptr. 737], and *People* v. *Koch* (1970) 4 Cal.App.3d 270, 275 [84 Cal.Rptr. 629].[2] *People* v. *Lustman, supra,* is disapproved to the extent that it conflicts with the views expressed herein.

---

[2]Our conclusion is also supported by the construction given the statute by the Employment Development Department, the administrative agency charged with its enforcement and interpretation.

After oral argument, we directed the following letter to respondent: "One question presented by this case is, of course, whether section 2101 of the Unemployment Insurance Code is applicable only to *attempted* unemployment insurance fraud. In resolving such a question, great weight is accorded contemporaneous administrative construction of the statute by the agency charged with its enforcement and interpretation. (See, e.g., *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140.) Therefore, respondent is directed to ascertain and to inform the court whether the [Employment Development Department] has a policy of prosecuting *completed* unemployment insurance fraud under section 2101 in certain circumstances, e.g., when the fraud is practiced, not in the initial application for benefits, but in failure to reveal a subsequent disqualifying change of circumstances.

In response to our letter, the chief counsel of the EDD filed a memorandum confirming that the department does interpret section 2101 as applicable to completed unemployment insurance fraud except in cases involving "fraud in the inception." As the chief of the EDD investigative section stated in a declaration attached to the memorandum: "Since the enactment of the [predecessor to section 2101 in 1935], it has been consistently applied to individuals who have fraudulently *obtained* benefits as the result of misstatements or nondisclosure of material facts. . . . The mere attempt to get

### (b) ▪ Unemployment Insurance Fraud Cannot Be Prosecuted Under Section 470 of the Penal Code

One of the elements of the crime defined by section 470 is signing the name of another, or of a fictitious person to, or otherwise forging, one of the documents enumerated in the statute. Pointing out that forgery is not expressly made an element of section 2101, the People contend that section 2101, therefore, does not supplant section 470 when unemployment insurance fraud involves forgery.

An analogous question was presented in *People* v. *Swann* (1963) 213 Cal.App.2d 447 [28 Cal.Rptr. 830]. Charged by information with forgery, the defendant had allegedly used a credit card without the owner's permission, forging the owners's name to a credit invoice. The information was set aside on the ground that former section 484a of the Penal Code, making it an offense, inter alia, to "use" a lost or stolen credit card, was a special statute precluding prosecution of such misconduct under section 470.³ The People appealed, contending, as they have here, that the general statute was not supplanted by the special statute because

---

benefits fraudulently is rarely prosecuted. Normally the prosecutor requires evidence that the individual in question drew benefits as the result of his fraudulent act."

The EDD interprets section 2101 as being inapplicable to cases involving "fraud in the inception." "Cases of this kind may come about, for instance, where there is a 'grand design' to defraud, such as the formation of fictitious businesses which register with the department as covered employers and are then used for the purpose of claiming benefits by persons not entitled to receive them; or an individual may 'usurp' the names and records of persons other than himself to claim benefits; or the claim may be based on forgery. Under these circumstances, no valid claim can be filed, since the claim itself is based on fraud. This 'fraud in the inception' is the basis for prosecutions under the Penal Code. [¶] It is the view of the department that Section 2101 was not intended by the legislature to cover criminal actions of the kind just described in the preceding paragraph; that is, cases where there is fraud in the inception. Forgery, for instance, is a specific crime not related uniquely to the false claiming of benefits, whereas Section 2101 clearly implies punishment for acts specifically related to misstatements concerning eligibility for benefits under a valid claim. 'Grand theft' is not used as a ground for prosecution under Section 2101 no matter what amount of benefits is fraudulently obtained, but it is appropriate as a ground in the 'fraud in the inception' case where the amount involved is sufficient for the charge of grand theft."

We are not persuaded by the department's argument that cases involving "fraud in the inception" are appropriately prosecuted under the general theft and forgery provisions of the Penal Code. However, the department's practice of prosecuting other forms of completed unemployment insurance fraud under section 2101 makes us more confident of our conclusion that section 2101 is not limited to attempted unemployment insurance fraud.

³Former section 484a, added by Statutes 196_, chapter 813, section 1, and repealed by Statutes 1967, chapter 1395, section 1, was the forerunner of present sections 484d through 484i of the Penal Code.

forgery was not expressly made an element of the special statute. In an opinion prepared by Presiding Justice Burke, subsequently a member of this court, the Court of Appeal affirmed the order setting aside the information. "The People's argument that the signing of the credit invoices should be separated from the 'use' of the credit card making such signing separately chargeable as forgery is without merit. Certainly the Legislature in enacting section 484a, Penal Code, contemplated false or unauthorized signatures on credit invoices by parties engaged in the misdemeanor use of credit cards . . . since such signatures are required of credit card users in the customary use of such cards." (213 Cal.App.2d at p. 451.) *Swann* was cited with approval by this court in *People* v. *Ali* (1967) 66 Cal.2d 277, 279 [57 Cal.Rptr. 348, 424 P.2d 932].

Here, too, the Legislature unquestionably contemplated that the special statute might be violated by means of forgery. Indeed, applying for aid under a false identity, which entails signing eligibility questionnaires and pay certification cards with a false name, is apparently one of the most common forms of unemployment insurance fraud. Therefore, such fraud may not be prosecuted under section 470. *People* v. *Lustman, supra,* is disapproved on this ground as well.

Reversing the judgment renders it unnecessary to reach most of defendant's remaining contentions. However, because the admissibility of the fruits of the searches will inevitably arise again on retrial, we proceed to consider that question.

### *The Consent Search of Defendant's Automobile*

Both the EDD investigator who apprehended him and the police officer who subsequently took custody of him advised defendant of his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. On both occasions, defendant declined to make a statement. When defendant arrived at the police station, he appeared to be hyperventilating and "quite upset, quite nervous." However, during the booking interview, defendant's breathing slowed and he "calmed down somewhat;" he appeared to be "rational" and to understand the "nature" and "gravity" of his situation.

At the conclusion of the booking interview, which was recorded and transcribed, defendant consented to a search of his automobile. "[Officer]: Gary, we are impounding your car and we are obtaining a search warrant for it. We will be able to hold the car until we search it. It

might not be necessary to impoun the car. However, if we have a permissive search from you we expe t to find things of the same nature in your car with all of the other recor s. You can consent to such a search knowing that we can use the materia against you. However, you do not have to consent to it. In fact, you can lemand we get a search warrant. In that case we will get a search warran but your car will be impounded in the meantime. What is your choice? ¶] Ruster: Well, you might as well search it then. [¶] [Officer]: Okay. This is freely and voluntarily? [¶] Ruster: Yes."

Relying on *People* v. *Superior Co rt (Keithley)* (1975) 13 Cal.3d 406 [118 Cal.Rptr. 617, 530 P.2d 585] an l *Bumper* v. *North Carolina* (1968) 391 U.S. 543 [20 L.Ed.2d 797, 88 S.Ct 1788], defendant contends that the search of his automobile was illegal t :cause his purported consent to the search was involuntary.

Defendant's reliance on *People* v. *Superior Court (Keithley), supra,* is misplaced. In *Keithley,* the police con inued to interrogate the defendant, obtaining an incriminating statemei t from him, after he asserted his *Miranda* rights. Subsequently, he cor iented to a search of his residence. When his motion to suppress the evi ence seized during the search was granted, the People sought review )y writ of mandate. (Pen. Code, § 1538.5, subd. (o).) Substantial ev dence supported the trial court's implied finding that the consent tc the search was the fruit of the *Miranda* violation. Therefore, we den ed the writ.

*Keithley* is inapposite here becaus defendant's *Miranda* rights were not violated. Seeking his consent to earch after defendant invoked his privilege against self-incrimination lid not violate the privilege. "A consent to search, as such, is neither .estimonial, nor communicative in the Fifth Amendment sense. If appea ing in a lineup and speaking words used by a robber is not a 'disclosui : of any knowledge [the accused] might have' (*United States* v. *Wade,* : 38 U.S. 218, 222 [18 L.Ed.2d 1149, 1155, 87 S.Ct. 1926]), neither is a cc isent to search. The fact that the search leads to incriminating evidc nce does not make the consent testimonial, any more than the victim s identification at the lineup gives such a quality to the words spoken l y the suspect." (*People* v. *Thomas* (1970) 12 Cal.App.3d 1102, 1110 [ )1 Cal.Rptr. 867]; see *People* v. *Strawder* (1973) 34 Cal.App.3d 370, 3' )-380 [108 Cal.Rptr. 901].) There is no other evidence of a *Miranda* violat )n here.

Defendant's reliance on *Bumper* v. *North Carolina, supra,* is also misplaced. In *Bumper,* the defendant's cotenant consented to a search of their residence after the officer conducting the search told her that he had a warrant. The court held the consent involuntary. "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." (391 U.S. at p. 550 [20 L.Ed.2d at p. 803].)

*Bumper* is inapposite because the officer here did not claim present authority to search under a warrant. Instead, the officer merely informed defendant that he would obtain a warrant if defendant did not consent to the search. Moreover, in the same breath the officer expressly informed defendant that he need not consent to the search, that the search was expected to reveal incriminating evidence, and that such evidence would be admissible against him.

"[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." (*Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 227 [36 L.Ed.2d 854, 862-863, 93 S.Ct. 2041]; see *People* v. *Michael* (1955) 45 Cal.2d 751, 753 [290 P.2d 852].) The trier of fact's resolution of this question will not be disturbed on appeal if there is substantial evidence to support it. (*People* v. *Superior Court (Keithley), supra,* 13 Cal.3d at p. 410; *People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) There is such evidence here.

### The Warrant Search of Defendant's Residence

Relying on *People* v. *Grant* (1969) 1 Cal.App.3d 563 [81 Cal.Rptr. 812], defendant contends that the search warrant for his San Mateo County residence was invalid because it was issued by a Santa Clara County magistrate.

In *Grant,* a San Mateo County magistrate issued a search warrant for the defendants' residence in that county, as well as their persons. San Mateo County peace officers in possession of the warrant observed the defendants driving in the county, but were unable to stop their car until

it entered adjoining San Francisco County. There a search of the pockets of one of the defendants revealed a large quantity of heroin.

Although ultimately upholding the search and seizure under a "hot pursuit" theory, the Court of Appeal held that the effect of a search warrant ordinarily should be limited to the county issuing it. "The person offended should have a ready forum in which to attack the validity of the search or seizure, and not be subjected to following his property across county lines, or conceivably to the opposite end of the state." (1 Cal.App.3d at p. 569.) If the property of a stranger to a criminal investigation were seized in one county pursuant to a warrant issued by a magistrate in another county, it might well be inconvenient for him to contest the validity of the search or seizure in the county issuing the warrant. But that is not the case here. Defendant had already been arrested and admitted to bail in Santa Clara County when the warrant issued; the charges to which the evidence pertained were triable in Santa Clara County. Therefore, Santa Clara County was the most convenient forum in which to resolve the validity of the search and seizure. The Santa Clara County magistrate had jurisdiction to issue the warrant.

■ Defendant further contends that the warrant was invalid because the affidavit in support of it did not establish that the affiant's informants spoke with personal knowledge of the matters stated therein. (See *Aguilar* v. *Texas* (1964) 378 U.S. 108, 14 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *People* v. *Superior Court (Johnson* (1972) 6 Cal.3d 704, 711 [100 Cal.Rptr. 319, 493 P.2d 1183]; *People* v. *Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681].)

The affiant was an investigator for the district attorney's office. His informants were the chief investigator for that office and the EDD investigator who apprehended defendant. The information provided by the chief investigator was in turn based on information provided him by investigators for the district attorneys of other jurisdictions. If the affidavit is read in a commonsense manner, as it must be (*United States* v. *Ventresca* (1965) 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741]; *People* v. *Mesa* (1975) 14 Cal.3d 466, 469 [121 Cal.Rptr. 473, 535 P.2d 337]), it is clear that the ultimate sources of information spoke with personal knowledge of it. The fact that the information was relayed to the affiant through "official channels" did not vitiate its reliability. (See *People* v. *Terry* (1970) 2 Cal.3d 362, 394 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Ross* (1967) 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d

606], reversed on other grounds, 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850].) The warrant was valid.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Richardson, J., concurred.