[Civ. No. 4039. Fifth Dist. Dec. 27, 1978.]

RICHARD MANNING, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE FRESNO JUDICIAL
DISTRICT OF FRESNO COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

[Civ. No. 4040. Fifth Dist. Dec. 27, 1978.]

JOHN MARTINEZ, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE FRESNO JUDICIAL
DISTRICT OF FRESNO COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

**COUNSEL**

Melvin W. Nitz, Public Defender, Robert W. Rainwater and Carolyn Morse, Deputy Public Defenders, for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and Paul H. Dobson, Deputy Attorneys General, for Real Party in Interest and Respondent.

## OPINION

**BROWN (G. A.), P. J.**—In separate proceedings criminal complaints for fraudulently obtaining unemployment insurance benefits in violation of Unemployment Insurance Code section 2101 were filed against Richard Manning and John Martinez in the municipal court. The municipal court denied their motions to dismiss the actions, which were made on the ground that at no time were they notified of the possibility of making restitution for the overpayments of benefits in lieu of criminal prosecution. Their petitions for writs of prohibition in the superior court on the same ground were denied. These appeals followed from the denial.

Since both cases, though separately filed and prosecuted, involve identical issues we have consolidated them for disposition in this court.

The parties stipulated to the following facts: "[The petitioners], upon receiving a letter requesting [their] presence, met with [agents of the] California Employment Development Department, regarding possible overpayments which [they] had received while collecting unemployment insurance benefits. At this meeting, [petitioners] made and signed a statement in regard to the circumstances of the payment. [They] also received a copy of a 'Notice of Intent to Request Criminal Complaint' attached hereto as Exhibit 'D.'[1] At no time during this meeting or at any other time was the possibility of the [petitioners'] making restitution in lieu of [their] prosecution discussed."

The provisions of Unemployment Insurance Code section 2113, set forth in the margin,[2] govern these proceedings. Appellants do not allege that they ever offered to make restitution.

---

[1] The notice of intent to request criminal complaint contained the following language: "Pursuant to Section 2113 of the California Unemployment Insurance Code, you are hereby advised that it is the intention of the Employment Development Department to prosecute you for violation of Section 2101 of the Code. On or after [*date*], this case will be submitted to the proper prosecuting authority for issuance of a criminal complaint."

[2] Unemployment Insurance Code section 2113 provides: "Nothing in this division shall prevent the Department of Employment Development from accepting restitution or an

■    Manifestly, the notice set forth in footnote 1, *ante,* which was sent to appellants, complied with the literal requirements of section 2113 that "[t]he Department of Employment Development shall by mail or personal service give such person written notice of intent to file a criminal complaint not less than 10 days prior to the filing of the criminal complaint." Appellants argue that compliance with the letter of section 2113 is not sufficient; that the department was required to go further and notify appellants that they could make an offer of restitution.

Appellants' contention is grounded upon the Supreme Court's decision in *People* v. *McGee* (1977) 19 Cal.3d 948 [140 Cal.Rptr. 657, 568 P.2d 382], which held that under section 11483 of the Welfare and Institutions Code the Department of Employment Development must first seek restitution of welfare payments obtained by fraud before instituting a criminal prosecution.

The determinative answer to this effort to analogize aid for dependent children (AFDC) payments to unemployment insurance payments is found in the dissimilar language of the governing statutory provisions. Thus the relevant provisions of Welfare and Institutions Code section 11483 provided: "All actions necessary to secure restitution *shall* be brought against persons in violation of this section as provided in Sections 12250 and 12850." (Italics added.) The provisions of sections 12250 and 12850 incorporated into section 11483 provided: "It is the intent of the Legislature that restitution *shall* be sought by request, civil action, or other suitable means prior to the bringing of a criminal action." (Italics added.) (See *People* v. *McGee, supra,* 19 Cal.3d at pp. 957-958.) It is

acceptable arrangement for restitution, made voluntarily before such department files a criminal complaint, for overpayment of benefits from any person, who has not previously claimed any right under this section, who has not been convicted of an offense under Section 2101 within three years preceding the service under this section of a written notice of intent to file a criminal complaint and who has willfully made a false statement or representation or knowingly failed to disclose a material fact to obtain or increase any benefit under any provision of this division. *The Department of Employment Development shall by mail or personal service give such person written notice of intent to file a criminal complaint not less than 10 days prior to the filing of the criminal complaint.* The Department of Employment Development *may* accept restitution or an arrangement for restitution and any such acceptance shall be in lieu of any criminal action against such person, except that such department shall not be precluded from filing a criminal action against any person who defaults under an arrangement for restitution which it has accepted. For purposes of this section, no period of time during which an arrangement for restitution is in effect shall be a part of any limitation of the time for commencing a criminal action. The Department of Employment Development shall deposit amounts received from any person under this section in the fund from which the overpayments were made." (Italics added.)

noteworthy that the quoted section contains the mandatory language "shall." (Welf. & Inst. Code, § 15.) The *McGee* court held that since the requirement that restitution be attempted was intended to protect individuals accused of welfare fraud, section 11483 must be accorded mandatory effect and that the state's failure to comply with the prescribed procedure constitutes a basis for challenging the subsequent criminal prosecution. (*People* v. *McGee, supra,* at p. 961.)

In contrast the language of section 2113 (except for the giving of the 10-day notice which was complied with) regarding the decision to seek restitution uses the discretionary word *may* (Unemp. Ins. Code, § 15), thus leaving it to the department in its discretion to accept restitution in lieu of prosecution. (50 Ops.Cal.Atty.Gen. 128, 130 (1967).) This interpretation is in accord with the administrative interpretation of the section (see Cal. Admin. Code, tit. 22, § 2113-1) which, while not determinative, is entitled to great weight. (*People* v. *McGee, supra,* 19 Cal.3d at p. 961; *People* v. *Ruster* (1976) 16 Cal.3d 690, 697, fn. 2 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].) It also comports with the interpretation given to the section by the Attorney General (50 Ops.Cal.Atty.Gen. 128 (1967)). For this court to hold otherwise would be a clear usurpation of legislative authority.

Appellants rely upon some dicta used by the *McGee* court in footnote 7 at page 964, where the court explicated: "The only comparable statutory provision of which we are aware supports this conclusion. Under section 2113 of the Unemployment Insurance Code, the state is required to notify an individual suspected of fraudulently obtaining unemployment insurance benefits before bringing a criminal prosecution, to enable such individual to demonstrate his willingness to make restitution. (See 50 Ops.Cal.Atty.Gen. 128 (1967).) Although the terms of section 2113 are not identical to the statutory provisions at issue here, taken together, the sections do indicate that as to those suspected of fraudulently obtaining basic subsistence benefits, the Legislature generally believes that willingness to make restitution is a factor to be taken into consideration in determining whether or not to pursue criminal prosecution."

However, it is apparent that the first sentence of this dicta refers to the express notice requirement contained in section 2113 that the state "shall . . . give such person written notice of intent to file a criminal complaint not less than 10 days prior to the filing of the criminal complaint." It appears to us that by limited analogy all the court was saying was that the general purpose behind mandatory notification procedures is to encour-

age a "willingness to make restitution." The court was not interpreting the specific terms of section 2113 to require anything more than its express language sets forth, and that is that the potential defendant be given 10 days' notice of the intention to file a criminal complaint, thus giving the person an opportunity to offer an explanation of the evidence relating to overpayment of benefits and provide the department with additional information which could be used by the department in determining whether or not to prosecute.

The judgments are affirmed.

Franson, J., and Vilas, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 21, 1979.

*Assigned by the Chairperson of the Judicial Council.