[Crim. No. 14415. Third Dist. Aug. 22, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
CLIFTON SHEGOG, Defendant and Appellant.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Cynthia A. Thomas, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Roger E. Venturi and Ellen M. Peter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CARR, J.**—In this appeal we are asked to consider the parameters of section 7507.9, Business and Professions Code,[1] in relation to Fourth Amendment and privacy rights. Section 7507.9 sets forth the statutory duties imposed on a repossessor of personal property in the care and disposition of personal effects or other personal property not covered by the security agreement which are contained in or on the repossessed property at the time it is recovered. It provides that any personal property contained in a repossessed vehicle "shall be removed from the vehicle, a complete and accurate inventory shall be made, and the personal effects shall be stored in a labeled container by the [repossessor] for a minimum of 60 days in a secure manner, . . ." The section also requires "[d]eadly weapons and dangerous drugs shall be turned over to a local law enforcement agency for retention." (Subd. (b)(1).)

Defendant moved to suppress as the products of warrantless searches all personal property removed from his repossessed automobile by the repossessor and turned over to the sheriff's department and all evidence seized during a search of defendant's home. After denial of the motion, defendant pled guilty to second degree murder and was sentenced to prison for 15 years to life. On appeal he asserts error only in the denial of the suppression motion.

We conclude the motion was properly determined by the trial court and shall affirm the judgment.

### FACTS

In the course of investigating the killing of one Ricky Jones, who died of 10 gunshot wounds from a .22-caliber gun, Detective Tony Kostella of the Sacramento Sheriff's Department interviewed Vicki Hart. She informed him that defendant might have been involved in the homicide, that defendant usually kept a .22-caliber handgun under the front seat of his vehicle, and that the vehicle had been repossessed earlier that day. Kostella immediately began calling repossession agencies in Sacramento and was advised by

---

[1]All statutory references are to the Business and Professions Code unless otherwise indicated.

Stephen Larson of American Lending Service that his agency had repossessed defendant's Honda earlier that day. Kostella asked Larson if a gun had been recovered from the vehicle. Larson stated no gun was found, but that a .22-caliber clip with eight rounds of .22-caliber ammunition was retrieved. Kostella told Larson he would come to the repossession agency to talk to him. At this time Larson had completed an inventory of the vehicle's contents and placed the property in the repossession agency's storage bag. Later that day Kostella examined defendant's property which was on display in Larson's office and took custody of the .22-caliber magazine and a telephone.

The same day Kostella located defendant at his place of employment and drove him to Kostella's office for questioning. Kostella advised defendant of his *Miranda* rights.[2] During questioning, defendant confirmed he owned a Honda that had recently been repossessed. When Kostella inquired about specific contents of the vehicle, defendant invoked his rights to remain silent and have an attorney present during questioning. Kostella then asked defendant if detectives could nevertheless search his residence. Defendant stated he had no problem with that. Defendant and Kostella proceeded to defendant's home where they met other detectives. They encountered a woman who shared a bedroom with defendant. After consulting with defendant, the woman signed a form consenting to a search of the bedroom. During the search, the detectives seized .22-caliber ammunition and a .22-caliber automatic pistol and nine spent cartridges, which they located in an athletic bag inside a laundry basket.

I

■ Defendant's initial challenge is to the court's denial of his motion to suppress the evidence turned over to the sheriff's department by the repossession agency. Defendant equates the removal, inventory and storage of personal property taken from a repossessed vehicle by a repossessor with a wrongful search by a private citizen. There is no violation of any Fourth Amendment rights in such search as the prohibitions against unreasonable searches found in both the United States and California Constitutions generally apply only to the government or its agents. (*Burdeau* v. *McDowell* (1921) 256 U.S. 465 [65 L.Ed. 1048, 41 S.Ct. 574, 13 A.L.R. 1159]; *People* v. *De Juan* (1985) 171 Cal.App.3d 1110, 1120 [217 Cal.Rptr. 642].)
■ However, any warrantless examination, search or use by law enforcement officers of the results of a private search is limited to the scope of the private search, in the absence of a plain view or other exception to the warrant requirement. (*Walter* v. *United States* (1980) 447 U.S. 649 [65

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

L.Ed.2d 410, 100 S.Ct. 2395].) Or as expressed by the United States Supreme Court in *United States* v. *Jacobsen* (1984) 466 U.S. 109 [80 L.Ed.2d 85, 104 S.Ct. 1652] "[t]he Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated." (*Id.,* at p. 117 [80 L.Ed.2d at p. 97].) ■■■ Defendant reasons that section 7507.9 and related sections express a recognition by the Legislature that there is a reasonable expectation of privacy as to personal property situated on or in repossessed property as to all persons except the repossessor, and, as to the repossessor, the expectation of privacy is diminished only insofar as is required to inventory and secure the personal property. This legislative intent is allegedly demonstrated by the requirement that the repossessor remove, inventory and store for a minimum of 60 days in a secure manner any personal property found in the repossessed vehicle (§ 7507.9); that the repossessor is not empowered to do anything further with the personal property after inventory and storage and, in fact, is subject to fine or loss of license for use, appropriation or disposal of such property (§§ 7508.2-7510.1). Thus, defendant concludes Detective Kostella's search and seizure of defendant's personal property at the repossessor's office was violative of defendant's Fourth Amendment rights and the evidence seized should have been suppressed.

Moreover, the provision of subdivision (b)(1) of section 7507.9 requiring repossessors to turn over to law enforcement agencies all deadly weapons and dangerous drugs is seen by defendant as demonstrating that a person's expectation of privacy as to any noncontraband property is not frustrated when the property is obtained through a lawful repossession. This argument is a non sequitur: by requiring repossessors to deliver contraband found in repossessed vehicles to law enforcement agencies, the Legislature did not prohibit repossessors from permitting law enforcement officials to inspect noncontraband items.

Neither party has directed our attention to any case law construing section 7507.9 or the Repossessors Act, of which section 7507.9 is a part and our independent research has not uncovered any. The legislative history, however, albeit skimpy, discloses a concern for the protection of the personal property rights of the owner of a repossessed vehicle rather than that owner's privacy rights in the personal property. The legislative purpose appears as one to safeguard the property from the larcenous hands of the repossessor's agents, not to shield the property from the probing eyes of law enforcement officers.

The Repossessors Act, sections 7500-7511, inclusive, was enacted in 1981, reportedly in response to abuses by repossessors, who, prior to the 1981 Act, were required to be licensed and were subject to discipline but

were virtually unregulated because of the lack of a separate bureau, programs, staffing and funds. (See Repossession Agency Program, Report of the Bureau of Collection and Investigative Services Dept. of Consumer Affairs, to the Sen. Rules Com., filed Oct. 5, 1981, at pp. 1, 2, hereafter called Agency Report).[3] The new act made important changes in the law governing repossessors. An important factor was gathering all laws relating to repossessors in one act. Prior thereto the various laws were scattered throughout the Private Investigators Act which regulates private investigators, security guards and alarm company operators.[4] Of greater importance was the protection afforded persons whose personal property was to be repossessed, e.g., repossessors may not enter private property to repossess without the consent of the owner (§ 7539, subd. (g)).[5] One of the basic purposes of the Repossessors Act was reported to be consumer protection. The licensing and regulation of repossessors and their employees was deemed necessary to protect consumers from past abuses of breaking and entering, illegal repossessions, and misrepresentation by repossessors and missing personal effects. (Agency Report, pp. 4, 8.) We perceive the legal requirement that a repossessor remove and inventory personal property found in a vehicle as being directed not at safeguarding the owner's privacy interest in that property, but at ensuring the owner's right to regain *possession* of his property. In our view, this represents an acknowledgement by the Legislature that in order to preserve and protect that possessory interest, the owner's privacy interest in the property must first be sacrificed. The owner of property which has been repossessed has no reasonable expectation of privacy as to any personal property located in or on the repossessed property if the repossessor complies with his statutory duty to remove, inventory and store the personal property. In view of the repossessor's evident compliance with section 7507.9 in this case, any expectation of privacy by the defendant had already been frustrated by the time Detective Kostella arrived to view the property in question. Kostella merely reexamined property that the repossessor had already scrutinized. Kostella's conduct may not be characterized as a search which implicated the Fourth Amendment.[6] (*United States* v. *Jacobsen, supra,* 446 U.S. at pp. 113, 118-119 [80 L.Ed.2d at

[3]This report was filed pursuant to Statutes 1978, chapter 772, sections 4 and 4.5 and is in the file of the Assembly Business and Professions Committee for AB 1453 of 1981, State Archives Division, Secretary of State's Office.

[4]We attach no significance to the fact that from 1915 to 1944, licensing and discipline under the Private Investigators Act was placed with the Board of Prison Directors. (See Stats. 1915, ch. 635, p. 1253; Stats. 1927, ch. 885, p. 1938; Stats. 1941, ch. 43, p. 622; Stats. 1945, Third Ex. Sess. 1944, ch. 2, § 21, p. 25.) In 1944, the powers of licensing and discipline were placed with the Director of Professional and Vocational Standards.

[5]Complaints as to repossessors entering locked premises to repossess vehicles and entering unlocked garages and taking property in addition to the secured vehicle were reported. (Agency Report, pp. 3, 4.)

[6]The Attorney General alternatively characterizes Kostella's conduct as a warrantless search

pp. 94, 97-98].) The court correctly refused to suppress the evidence Kostella thereby obtained.

## II

■ The trial court ruled that since defendant consented to a search of his residence the evidence found therein should not be suppressed.[7] On appeal, defendant challenges the validity of this purported consent, urging that his permission to search was obtained through questioning that took place after he had asserted his rights under *Miranda* to remain silent and speak to an attorney.[8] The very same contention was rejected in *People* v. *Ruster* (1976) 16 Cal.3d 690 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269], in which the Supreme Court held that seeking a defendant's consent to search after he had invoked his privilege against self-incrimination does not violate the privilege. (*Id.,* at p. 700.)

The judgment is affirmed.

Evans, Acting P. J., and Mulkey, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied November 19, 1986.

---

of defendant's vehicle that was justified under the automobile exception to the warrant requirement. The exception is inapplicable here. Although it is true Kostella searched the interior of defendant's vehicle, the fruits of that search were suppressed. The items in question here, namely the .22-caliber magazine and the telephone, were inspected by Kostella in the repossessor's office some time after the repossessor had removed them from defendant's car and locked them in a storage area.

[7]The Attorney General argues that "[e]ven if the appellant had not consented to his residence search, his roommate girlfriend's consent was an independent permissible basis for the search." Defendant contests this claim based on the fact that "[t]he prosecution failed to show that the girlfriend had any access or control over the athletic bag which may have belonged solely to appellant." We do not share defendant's belief that the search extended beyond the scope of the girlfriend's consent. The athletic bag, in which the detectives found the pistol and the spent cartridges, was inside a laundry basket. Experience instructs that laundry baskets typically serve as receptacles which are used by, and accessible to, several occupants of a household at once. We consider it a reasonable assumption that, as an occupant of the bedroom, the girlfriend shared with defendant equal control over and access to the laundry basket and its contents so that she could consent to the search in question.

[8]Prior to asserting his *Miranda* rights, defendant apparently discussed with Kostella the possible search of his home by detectives. However, we infer from the court's characterization of Kostella's specific question in this regard and defendant's response as "ambiguous," that the court did not find defendant consented to the search before asserting his *Miranda* rights.

*Assigned by the Chairperson of the Judicial Council.