[No. E012399. Fourth Dist., Div. Two. Mar. 1, 1995.]

In re RICARDO A., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RICARDO A., Defendant and Appellant.

## COUNSEL

Marcia O. Likins, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil P. Gonzalez and Patti W. Ranger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, J.**—In this appeal, minor Ricardo A. challenges the juvenile court's finding that he is in criminal contempt of court in violation of Penal Code section 166, former subdivision 4, because he violated the terms and conditions of his probation by possessing a knife and gang paraphernalia.

His sole contention on appeal is that the true finding under Penal Code section 166, the general contempt statute, was improper because Welfare and Institutions Code section 213 is a more specific contempt section that supplants the Penal Code provision in juvenile court proceedings.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

On June 2, 1992, a petition was filed in juvenile court under section 602 which alleged that the minor came within the provisions of that section due to his commission of the crime of grand theft from the person (former Pen. Code, § 487, subd. 2, amended Stats. 1989, ch. 930, operative Jan. 1, 1993, now Pen. Code, § 487, subd. (c)).

On July 22, 1992, the minor admitted the allegation and was placed in the custody of his parents on terms of probation for three years. Among the terms and conditions of his probation were that he "[n]ot possess any dangerous or deadly weapons, including, but not limited to, any knife, gun or any part thereof," that he "not possess . . . any insignia, emblem, . . . article of clothing, . . . or paraphernalia associated with membership or affiliation with any gang," and that he "[s]ubmit to a search of [his] person . . . or place of residence . . . ."

On September 26, 1992, a probation search of a room which the minor identified as his bedroom turned up a shotgun under the bed and shotgun shells on the dresser. A further booking search revealed that the minor was wearing a belt buckle with a gang insignia and had a knife in his pocket.

On September 29, 1992, a second petition was filed which, as subsequently amended, alleged that the minor came within the provisions of

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

section 602 based on the following violations: count 1, possession of a shotgun in violation of the conditions of his probation (Pen. Code, § 12021, subd. (d)); count 2, burglary (Pen. Code, § 459); count 3, possession of live ammunition by a minor (Pen. Code, § 12101, subd. (b)); and count 4, contempt of court, in that he possessed gang paraphernalia and a knife in violation of a court order (Pen. Code, § 166, former subd. 4).

On October 7, 1992, the two cases were consolidated. At the jurisdictional hearing on October 27 and 28, 1992, the court granted the minor's motion to dismiss count 2, the burglary. The court found the allegations of the petition as to counts 1, 3, and 4 true.

On February 5, 1993, following a protracted dispositional hearing, the court found that prior dispositions had not been effective in rehabilitating the minor. It committed the minor to the California Youth Authority for the following maximum terms: on the original charge of grand theft from the person, three years; on count 1, possession of a shotgun, eight months; on count 3, possession of ammunition, two months, stayed pursuant to Penal Code section 654; and on count 4, contempt, two months, likewise stayed pursuant to Penal Code section 654. Thus, the total maximum term was three years and eight months.

The minor filed a timely notice of appeal.

## DISCUSSION

Penal Code section 166, subdivision (a) currently provides that "every person guilty of any contempt of court, of any of the following kinds, is guilty of a misdemeanor: . . . [¶] (4) Willful disobedience of any process or order lawfully issued by any court."[2]

Section 213 provides: "Any willful disobedience or interference with any lawful order of the juvenile court or of a judge or referee thereof constitutes a contempt of court."

Defendant argues that his prosecution under Penal Code section 166 was improper because section 213 is a more specific statute. He thus seeks to invoke the rule that: "Prosecution under a general statute is precluded by a special statute when the general statute covers the same matter as, and thus conflicts with, the special statute." (*People* v. *Ruster* (1976) 16 Cal.3d 690, 694 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].)

---

[2]The offense and sentencing here was prior to the 1993 amendment to Penal Code section 166. (Stats. 1993, chs. 345, 583.) The differences are not relevant here.

In *Ruster*, our Supreme Court held that section 2101 of the Unemployment Insurance Code, classifying as a misdemeanor fraudulent representation to obtain unemployment benefits, is a special statute precluding prosecution of such fraud under the general theft and forgery statutes. (*People v. Ruster*, *supra*, 16 Cal.3d 690, 693-694.) It held: "[A] special statute does not supplant a general statute unless *all* of the elements of the general statute are included in the special statute [citations]." (*Id.*, at p. 694.) The court determined that there was preclusion because all of the elements of the general statute were included in the special statute.[3]

Subsequently, our Supreme Court disapproved this language and restated the principle as follows: "The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent. The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and 'requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision . . . .' " (*People v. Jenkins* (1980) 28 Cal.3d 494, 503, fn. 9, 505-506 [170 Cal.Rptr. 1, 620 P.2d 587], fn. omitted.)

Defendant argues that there is preclusion here because the elements of the offense are the same under both statutes, i.e., both require willful disobedience of a lawful order of the court.

We agree with defendant that prosecution of his violation of the court's order as a criminal contempt falls within the quoted language of *People v. Ruster*, *supra*, 16 Cal.3d 690, 694, as interpreted by *People v. Jenkins*, *supra*, 28 Cal.3d 494, because there is no situation in which a person can violate the general section without violating the special section.

■ However, we reject defendant's attempted application of the preclusion doctrine because "[t]he principle that a specific statute prevails over a general one applies only when the two sections cannot be reconciled." (*People v. Wheeler* (1992) 4 Cal.4th 284, 293 [14 Cal.Rptr.2d 418, 841 P.2d 938]; see also *People v. Price* (1991) 1 Cal.4th 324, 385 [3 Cal.Rptr.2d 106, 821 P.2d 610]; Code Civ. Proc., § 1859.) In *Wheeler*, our Supreme Court

---

[3]Respondent cites the preclusion rule as stated in *Consumers Union of U.S., Inc.* v. *California Milk Producers Advisory Bd.* (1978) 82 Cal.App.3d 433, 446 [147 Cal.Rptr. 265]: "[W]here the same subject matter is covered by inconsistent provisions, one of which is special and the other general, the special one, whether or not enacted first, is an exception to the general statute and controls unless an intent to the contrary clearly appears." (See also *People v. Breyer* (1934) 139 Cal.App. 547, 550 [34 P.2d 1065].)

rejected a contention that a specific subdivision of California Constitution, article I, section 28, enacted by Proposition 8 in 1982, should prevail over a more general subdivision of section 28. Like the statutes at issue here, the two sections were not inconsistent. Accordingly, Penal Code section 166 could be applied here unless a contrary legislative intent appears.

■ The issue is whether the Legislature intended contempt to be prosecuted under Penal Code section 166 or not. We must therefore review the legislative intent regarding the use of Penal Code section 166 in juvenile proceedings. After doing so, we find an intent not to use Penal Code section 166 in juvenile court proceedings for status violations of probation conditions. Accordingly, we find that the use of Penal Code section 166 was inappropriate.

Respondent argues that the use of Penal Code section 166 was proper, and that the two contempt sections are not inconsistent. The basis of respondent's argument is that, although section 213 is more specific (in that it refers to an order of the juvenile court), it is not a special statute because (1) it can refer to either civil or criminal contempt; and (2) it specifies no penalties for its violation. Respondent thus contends that the penalties for violation of section 213 are specified in Code of Civil Procedure section 1218 (up to $1,000 fine and five days imprisonment) but that "[b]y its placement in the Code of Civil Procedure, section 1218 obviously pertains to instances of civil contempt . . . ." Respondent also asserts that, since "[t]he affront was to the court alone . . . [t]he contempt allegation and true finding was thus to vindicate the authority of the juvenile court." Respondent thus relies on the argument that criminal contempt under Penal Code section 166 is properly used to enforce compliance with orders of the juvenile court.

The legislative history does not support respondent's interpretation. The use of Penal Code section 166 in juvenile proceedings is not unprecedented.[4] The Legislature has amended the statutes several times in response to such use, and, as a result, the legislative intent is relatively clear.

In 1977, this court reviewed the application of Penal Code section 166 to status offenders under section 601. (*In re Ronald S.* (1977) 69 Cal.App.3d 866 [138 Cal.Rptr. 387].) In *Ronald S.*, a status offender was ordered to a nonsecure facility, and ordered not to leave it. When he promptly left, he

---

[4]See, for example, *In re Eric J.* (1979) 25 Cal.3d 522 [159 Cal.Rptr. 317, 601 P.2d 549], in which our Supreme Court upheld a delinquent's conviction of criminal contempt under Penal Code section 166 for violation of an order granting probation. The court did not discuss the propriety of charging under Penal Code section 166, or the applicability of Penal Code section 654. On the latter issue, see *Conn* v. *Superior Court* (1987) 196 Cal.App.3d 774, 786-787 [242 Cal.Rptr. 148].

was charged with a crime—a violation of Penal Code section 166, former subdivision 4, contempt of court. He thus became a juvenile offender under section 602. The section 602 filing was then used to hold the juvenile in a secure facility. This court held that this use of Penal Code section 166 was inappropriate and granted a habeas corpus petition. (See, Note (1978) 18 Santa Clara L.Rev. 267.)

In 1988, our Supreme Court considered a similar issue in *In re Michael G.* (1988) 44 Cal.3d 283 [243 Cal.Rptr. 224, 747 P.2d 1152]. In that case, a status offender under section 601 was found in contempt of court for violation of an order to attend school. The issue was whether he could be punished with confinement in a secure facility during nonschool hours. The court held: "[W]e conclude that a juvenile court retains the authority, pursuant to its contempt power, to order the secure, non-school-hours confinement of a contemptuous section 601 ward. At the same time . . . we conclude . . . that before a juvenile court orders such incarceration pursuant to its contempt authority, it should make a number of specified findings establishing the necessity of such a course of action." (*In re Michael G.*, *supra*, 44 Cal.3d at p. 287, fn. omitted.) The court discussed the juvenile court's contempt power as follows: "In finding petitioner in contempt for violating a valid court order, the juvenile court exercised the traditional power inherent in judicial officials. . . . The contempt power thus exists independent from legislative sanction although in this case the Legislature has specifically recognized that the juvenile court retains the ordinary contempt powers. (§ 213.)" (*Id.*, at pp. 288-289, fn. omitted.) After reviewing the statutory scheme, including a contention that sections 207 and 601 should control over section 213 because they are more specific in scope, the court said: "Viewing the statutory scheme as a whole, we thus conclude that while the legislative history demonstrates an intent to prohibit the juvenile court from relying on a ward's violation of a court order as a justification for elevating a section 601 ward to a delinquent [citation], there is nothing in that history which specifically indicates that the Legislature intended to prohibit a juvenile court from enforcing obedience to a court order through a contempt sanction that does not alter the status of the ward. Moreover, the Legislature's failure to expressly mention section 213 in either section 601, subdivision (b) or 207, or to amend section 213 itself, provides some evidence that it did not intend the secure detention ban or the school hours limitation to affect the scope of the juvenile court's contempt powers." (*In re Michael G.*, *supra*, at pp. 294-295, fn. omitted.)

The court therefore considered the juvenile court's inherent contempt power to be statutorily implemented by section 213, not by Penal Code section 166. If the contempt was charged as a criminal contempt under Penal

Code section 166, the effect would be to change the status of the juvenile to a delinquent under section 602. Since the court specifically approved *Ronald S.*, we may conclude that the court would also find, in an appropriate case, that Penal Code section 166 could not be used to convert a status offender to a delinquent.

"One of the most persistent complaints about the pre-1976 law was the ease with which a 601 could become a 602 and conceivably end up in the CYA." (*In re Ronald S., supra,* 69 Cal.App.3d 866, 870-871.) In 1976, the Legislature addressed the problem by deleting from section 602 "the proviso that one could become a 602 by violating an order of the court when a 601." (*In re Ronald S., supra,* at p. 872.)

*Ronald S.* found that the effect of the 1976 amendments was to eliminate a remedy for enforcement of lawful orders under section 601. The solution adopted by the juvenile court in that case, a contempt charge under Penal Code section 166, was held to be an inappropriate escalation of section 601 status to section 602 status: "As the law now stands, the Legislature has said that if a 601 wants to run, let him run." (*In re Ronald S., supra,* 69 Cal.App.3d 866, 874.)

The Legislature subsequently addressed the problem by amending section 207 to specify the circumstances under which a status offender could be detained in a secure facility. (See generally, 10 Witkin, Summary of Cal. Law (9th ed. 1989) Parent and Child, §§ 501, 734-735, pp. 552-554, 827-830.) It did not act to overrule *Ronald S.* The Legislature thus approved the prohibition against "bootstrapping" a status violation into a criminal violation by use of Penal Code section 166. "[T]he Legislature's general intent to deinstitutionalize status offenders calls for caution in exercising the contempt power." (10 Witkin, *op. cit. supra,* at § 735, p. 828.)

In 1986, the Legislature passed the California Juvenile Probation Revocation Procedural Act (Stats. 1986, ch. 757) which generally requires a supplemental petition under section 777 to revoke probation. Courts have rejected the use of contempt proceedings and other devices to evade the requirements of section 777. (1 Cal. Juvenile Court Practice (Cont.Ed.Bar Supp. 1994) § 11.41A, pp. 211-213; e.g., *In re Ronnie P.* (1992) 10 Cal.App.4th 1079 [12 Cal.Rptr.2d 875]; *In re Geronimo M.* (1985) 166 Cal.App.3d 573, 587-588 [212 Cal.Rptr. 532].)

Of course, the juvenile here was already a delinquent, and there is no prohibited "bootstrapping" from section 601 to section 602 in charging him with an additional crime. The situation here was considered in *In re Mary D.*

(1979) 95 Cal.App.3d 34 [156 Cal.Rptr. 829], and a different variety of "bootstrapping" was found objectionable. In that case, the juvenile was made a ward of the court after committing a crime. Her probation terms included a provision that she be placed in her parents' home. When she ran away, she was charged with criminal contempt under Penal Code section 166 and given a six-month term of confinement in a rehabilitation facility. Although she was already a delinquent, the court held that Penal Code section 166 could not be used in this manner. The court reasoned: "We are, however, confronted with a different aspect of the same bootstrapping technique [as the technique condemned in *Ronald S.*], one which appears to us to be subject to similar criticism. Here it is the punishment, custodial care in a more secure facility, which may be lengthened. [Citation.] This possibility of enlarged penalty is not in keeping with the nature of the offense, running away from home, which the Legislature has declared to be a section 601 offense. A runaway should be punished for that offense alone and not as a more serious law violator provided for by section 602." (*In re Mary D., supra,* at p. 38.)

Stated differently, "The court [in *Ronald S.*] held that the use of criminal contempt charges to place Welf & I C § 601 minors in secure custody is contrary to the clear intent of the legislature in enacting the secure custody limitations. The same principle applies when a minor who has been adjudicated delinquent under Welf & I C § 602 for committing a crime commits a Welf & I C § 601 act while on probation as a Welf & I C § 602 ward. That act may not be punished by invoking criminal contempt charges, even though the same disposition (incarceration) might properly be imposed under Welf & I C § 777. *In re Mary D.* (1979) 95 CA3d 34. . . ." (2 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 23.10, p. 228.)

The same is at least partially true here, since possession of a gang belt buckle would fall within the realm of status offenses, rather than criminal offenses. Depending on the facts, the possession of a knife may or may not be a status offense rather than a criminal offense.[5] These two violations thus appear to be primarily status offenses arising from the violation of the probation terms and conditions, rather than new criminal offenses.

We therefore conclude that *Mary D.* governs, and that a separate criminal contempt charge under Penal Code section 166 is inappropriate for

---

[5]If, for example, possession of the knife was a separate crime, either because of its character (Pen. Code, § 653k) or concealment (Pen. Code, § 12020), the separate crime could have been charged, rather than the violation of Penal Code section 166.

violations of probation conditions that are merely status offenses, and not separate crimes.[6]

The legislative intent in enacting section 777, relating to supplemental petitions, is that the supplemental petition procedures should be followed in cases in which the minor violates earlier orders specifying probation terms. However, the contempt provisions of section 213 remain available to the juvenile court to enforce its orders. (*In re Michael G.*, *supra*, 44 Cal.3d 283.) Since the use of Penal Code section 166 is inappropriate in the circumstances here, we reject respondent's argument that it, rather than section 213, was the proper way to vindicate the authority of the court. We follow our Supreme Court's statement that section 213 is the legislative recognition of the juvenile court's inherent contempt powers.

Accordingly, the legislative intent is clear that criminal contempts of the juvenile court that are status violations may only be punished under the special contempt statute (§ 213) and not under the more general contempt statute (Pen. Code, § 166). We therefore find that, although both statutes facially apply because they are not inconsistent, the legislative intent is that Penal Code section 166 not be used in juvenile court proceedings to enforce status violations of probation orders. The trial court erred in proceeding under Penal Code section 166 here.

We also reject respondent's argument that section 213 is not a special statute because it fails to specify the penalties for its violation. We find no significance in the fact that Penal Code section 166 and section 213 each require reference to other sections to determine the punishment for its violation. Penal Code section 166 makes the violation a misdemeanor, and the penalties for a misdemeanor are specified in Penal Code section 19. Section 213 provides that violation is a contempt of court. The penalties for violation are those set forth in Code of Civil Procedure, section 1218, relating to civil contempts generally. (*In re Michael G.*, *supra*, 44 Cal.3d 283, 289, fn. 3.) Although respondent implies that there is no preclusion because Penal Code section 166 is criminal in nature, while civil contempts under section 213 and Code of Civil Procedure section 1218 are not, the law is clear that "[a] civil contempt proceeding is criminal in nature because of the penalties that may be imposed." (*In re Witherspoon* (1984) 162 Cal.App.3d 1000, 1001 [209 Cal.Rptr. 67].)

We also reject respondent's argument that section 213 is not a special statute because it can refer to either civil or criminal contempt. While civil

---

[6]Of course the minor also violated the terms of his probation by possessing a shotgun and ammunition. These violations were separately charged here, and were not the basis for the Penal Code section 166 charge. The juvenile court properly applied Penal Code section 654 in sentencing on the violations it found true.

contempts under Code of Civil Procedure section 1209 have both civil and criminal aspects, the distinction is between contempts that can be cured and those that cannot. "When the contempt consists in the omission to perform an act which is still within the person's power to perform, the court may, in the alternative [to criminal punishment under Code Civ. Proc., § 1218], punish him for a civil contempt and order him imprisoned until he has performed the act (Code Civ. Proc., § 1219)." (*Morelli* v. *Superior Court* (1969) 1 Cal.3d 328, 332 [82 Cal.Rptr. 375, 461 P.2d 655].)

Nevertheless, the contempt proceeding under section 213 is criminal in nature, and we find no basis for respondent's suggestion that section 213 has both civil and criminal aspects in the context here. Both section 213 and Penal Code section 166 contempts are criminal contempts. We therefore reject respondent's argument that section 213 is not a special statute relating to contempt in juvenile court proceedings.[7]

This court requested further briefing on the applicability of *People* v. *Johnson* (1993) 20 Cal.App.4th 106 [24 Cal.Rptr.2d 628] to this case. *Johnson* held, in an adult probation revocation context, that "a trial court cannot punish conduct which amounts to a violation of a condition of probation as a contempt of court." (*Id.*, at p. 113.) Upon further consideration of the issue, we agree with respondent that the significant differences between the adult probation system and the juvenile probation system preclude application of *Johnson* in a juvenile context. (*In re Bernardino S.* (1992) 4 Cal.App.4th 613, 621 [5 Cal.Rptr.2d 746]; *In re Antonio A.* (1990) 225 Cal.App.3d 700, 706 [275 Cal.Rptr. 482].)

DISPOSITION

The judgment is affirmed as to counts 1 and 3. The judgment is reversed as to count 4.

Ramirez, P. J., and Dabney, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 17, 1995. Kennard, J., was of the opinion that the petition should be granted.

---

[7]Although respondent argues that there is no authority prohibiting use of Penal Code section 166, former subdivision 4, in section 602 proceedings, we find such authority in *In re Mary D., supra,* 95 Cal.App.3d 34. *Mary D.* was not discussed or cited by respondent.