[No. B144047. Second Dist., Div. One. Dec. 21, 2000.]

In re FRANCISCO S., a Minor, on Habeas Corpus.

948

COUNSEL

Michael P. Judge, Public Defender, Albert J. Menaster, Rudolfo Aguirre and Lisa R. Greer, Deputy Public Defenders, for Petitioner.

Gil Garcetti, District Attorney, George M. Palmer, Brent Riggs and Roberta Schwartz, Deputy District Attorneys, for Respondent.

OPINION

ORTEGA, Acting P. J.—Francisco S., a juvenile, admitted a first offense of possessing less than an ounce of marijuana on school grounds while school was in session. (Health & Saf. Code, § 11357, subd. (e).)[1] He was

---

[1] "[E]very person under the age of 18 who possesses not more than 28.5 grams of marijuana, other than concentrated cannabis, upon the grounds of, or within, any school providing instruction in kindergarten or any of grades 1 through 12 during hours the school is open for classes or school-related programs is guilty of a misdemeanor and shall be subject to

declared a delinquent court ward. (Welf. & Inst. Code, § 602.)[2] The court imposed the maximum penalty for that offense, a $250 fine, and placed Francisco home on probation under several conditions.

Later, the People filed a section 777[3] petition, seeking to end Francisco's home probation and suitably place him. The section 777 petition alleged Francisco failed to report to his probation officer or for drug testing, tested positive for drugs, was terminated from his mandatory school program for drug use, tardiness, and disobedience, failed to be home before curfew on 14 consecutive nights, and was disobedient to his parents. After a hearing, the court sustained the section 777 petition, and continued the case for a contested hearing to determine a suitable placement. Francisco does not challenge the court's orders regarding the section 777 proceedings.

The People also filed a contempt petition[4] based on the same conduct, alleging Francisco had violated his probationary conditions by failing to report to his probation officer on one day, missing a scheduled drug test on a second day, and staying out after curfew over a 14-day period. After a hearing which was consolidated with the section 777 hearing, the court also found Francisco in contempt. The court found 15 separate contempts, one for each of the 14 nights he violated curfew during the period alleged in the contempt petition, and a 15th violation for failing to report to his probation officer. The court imposed 60 days' juvenile hall confinement for contempt, staying 30 days.

Francisco petitioned for a writ of habeas corpus. We ordered him released, and issued an order to show cause. Francisco contends the trial court erred in (I) imposing punishment for contempt that exceeds the maximum punishment that could be imposed for the offense for which he was on probation; (II) not considering a less restrictive form of confinement; (III) finding him in contempt without a written order; and (IV) imposing confinement that violates Penal Code section 654.

---

the following dispositions: [¶] (1) A fine of not more than two hundred fifty dollars ($250), upon a finding that a first offense has been committed. [¶] (2) A fine of not more than five hundred dollars ($500), or commitment to a juvenile hall, ranch, camp, forestry camp, or secure juvenile home for a period of not more than 10 days, or both, upon a finding that a second or subsequent offense has been committed." (Health & Saf. Code, § 11357, subd. (e).)

[2]All further undesignated section references are to the Welfare and Institutions Code.

[3]"An order changing or modifying a previous order by removing a minor from the physical custody of a parent . . . and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after noticed hearing upon a supplemental petition. . . ." (§ 777.)

[4]The written contempt petition did not list a code section providing authority for the petition. Likewise, no code section was discussed at the hearing. Like the parties, we assume the contempt was based on section 213, not Penal Code section 166.

We agree with Francisco's first claim. We hold a juvenile court cannot confine a delinquent (§ 602) ward under its contempt power for more time than the maximum confinement time permitted under the offense or offenses which resulted in his wardship, where the contemptuous acts are violations of the ward's probationary conditions. In this case, since Francisco's offense carries no confinement time, the trial court cannot confine him for probation-based violations. We issue the writ and remand to the juvenile court for it to vacate its order of confinement time.[5] Because of our conclusion, we need not consider Francisco's other contentions.

### FACTS

On January 27, 2000, Francisco admitted a first offense of violating Health and Safety Code section 11357, subdivision (e). The court imposed the maximum penalty, a $250 fine. The court also placed Francisco home on probation on condition, among others, that he report as required to his probation officer, submit to random drug testing, maintain enrollment in school programs required by his probation officer, obey his parents, and not be out of his home between 6:00 p.m. and 7:00 a.m. without parental permission. Francisco did not object to any of these conditions.

The section 777 petition took the form of a probation report prepared on July 19, 2000, by Dennis Chormicle, Francisco's probation officer. As confirmed by an attached laboratory report, Chormicle's report stated that Francisco tested positive for marijuana on April 26, 2000. The report indicated Francisco failed to report as previously ordered to Chormicle on July 17, 2000. According to the report, Francisco also had been dropped from his mandatory school program for repeatedly smoking marijuana, arriving late, misbehaving, and daily "oppositional" behavior. (Capitalization omitted.) At least 12 reports documented this behavior. The report also disclosed that Francisco had stayed out " 'every night' " until between 11:00 p.m. and midnight from July 5 through July 18, 2000, and refused to obey his parents, using obscenities when they tried to control him. (Capitalization omitted.)

The report noted that Francisco had completed a drug and alcohol program, and he and his parents had completed joint family counseling and parenting programs. Francisco also had completed 55 of his required 75 community service hours through his school program before being dropped. Chormicle's evaluation stated: "[Francisco] is very oppositional. He has a problem with marijuana and it is believed that this impacts every aspect of his life. His relationship with his parents is terrible. He is not attending

---

[5] We limit our discussion to imposition of physical confinement as defined in section 726.

school due to his continued use of marijuana. His prior two arrests involve the possession of marijuana. He stays out late at night against his parents['] instructions and when they attempt to correct him, he becomes verbally abusive. [Francisco] requires a setting that will deal with his substance abuse problem. Fortunately, placement into a boy's group home or foster home whos[e] focus is upon the treatment of those minors who are chemically dependent does not require that [Francisco] have any confinement time. [Francisco's] underlying offense does not carry confinement time but none is necessary for the minor to receive residential treatment while suitably placed in an open setting." (Underscoring added; paragraphs and capitalization omitted.) The report recommended that Francisco's home on probation placement be ended and he be suitably placed, concluding: "In view of the absence of confinement time available, it is recommended that [Francisco] be ordered into a SODA/PAD[6] bed pending disposition on this change-of-plan." (Capitalization omitted.)

The original contempt petition, filed on August 3, 2000, tracked Chormicle's July 19, 2000, report, and alleged five instances of contempt: 1) failing to report to Chormicle on July 17, 2000; 2) being dropped from his mandatory school program for marijuana use, tardiness, and daily misbehavior; 3) disobeying his parents' orders through profanity and other disobedience; 4) testing positive for marijuana on April 26, 2000; and 5) staying out after curfew every night from July 5-18, 2000, inclusive. However, the prosecutor orally amended the contempt petition at the later contested hearing. The amended contempt petition alleged in count 1 that Francisco failed to report to his probation officer on July 17, 2000. Count 2 alleged he failed to report for drug testing on June 27, 2000. Count 3 alleged Francisco failed to return home before his curfew time between July 5 and July 18, 2000, without his parents' consent.

On August 24, 2000, the court held a contested hearing on both the section 777 and contempt petitions. Chormicle and Francisco's father testified. The court also considered Chormicle's July 19, 2000, probation report.

The court held the contempt hearing first. Consistent with his report, Chormicle testified that Francisco failed to report to him as ordered on July 17, and that Francisco's father reported that he stayed out past curfew every night from July 5 through July 18. The People withdrew count 2 because

---

[6]Status Offender Detention Alternative; Probation Alternative to Detention. At oral argument, the parties agreed these terms designate nonsecure placements, which do not qualify as "physical confinement" as defined in section 726. These facilities are highly supervised but nonfenced, where staffs are prohibited from using physical force to prevent a juvenile from walking away.

Francisco reported for the drug testing, but was one-half hour late and could not be tested because Chormicle was with another family. Francisco offered no evidence at the contempt hearing. Over Francisco's objection that the petition alleged only one contempt for violating curfew from July 5-18, constituting a single course of conduct, the court found Francisco in contempt for failing to report and found 14 separate contempts for each of the 14 nights he violated curfew, for a total of 15 counts of contempt.

The court then held the section 777 hearing. Chormicle testified Francisco was dropped from his required school program for smoking marijuana and other violations. Francisco was "oppositional" to the school program personnel and his parents, disobeying directives and using obscenity with his parents. He also tested positive for marijuana at least once. In defense, Francisco's father testified his behavior had improved since July 18, that he no longer disobeyed or used obscenities, and the father wanted him home. The father admitted he and his wife worked full time, had two other children at home, and did not know what efforts Francisco had made to return to the school program. The court sustained the section 777 petition, and continued that portion of the proceedings for a contested hearing to determine a suitable placement.

Regarding the contempt petition, the court imposed 60 days' custody in juvenile hall, staying 30 days, and ordering Francisco taken into custody immediately to begin serving the 30 days. Francisco objected he was being repeatedly punished for a single course of conduct, and that the court had not considered lesser penalties. The court stated: "If anything goes wrong, you have earned the 30 days. Or the opposite, if everything goes right, you can erase those other 30 days so that you don't do any[ ]more custody time."

### DISCUSSION

Francisco contends the trial court erred in imposing confinement time for contempt, based on conduct all of which constituted probation violations, which exceeded the maximum confinement time available for the offense for which he was made a delinquent court ward.

Minors may become subject to juvenile court jurisdiction in several ways. First, they may be declared dependent children under section 300 et seq. when their parents or custodians cannot provide an adequate home environment. Second, they may be declared wards under section 601 when they are habitually disobedient or truant from school, or violate curfew. Minors in this second category are frequently referred to as status offenders. Third, minors may be declared delinquent wards under section 602 et seq.

when they commit acts which would be crimes if committed by an adult. Here, we address only the third situation. We expressly limit our discussion and holding to section 602 delinquent wards.

Under section 727, a minor declared a delinquent court ward may be placed on supervised probation. The probation officer may place the ward in a relative's home, "[a] suitable licensed community care facility[,]" (*id.*, subd. (a)(2)) or "[w]ith a foster family agency to be placed in a suitable licensed foster family home or certified family home" (*id.*, subd. (a)(3)).

"When the juvenile court determines a minor is a ward of the court under . . . section 602, it has a variety of dispositional options. Should the court decide to place the minor on probation, '[t]he juvenile court has broad discretion in formulating conditions of probation.' ([Citations]; see . . . § 730, subd. (b) ['the court may make any and all reasonable orders for the conduct of the ward']; . . . § 729.1, subd. (a) ['Nothing in this section shall be construed to limit the authority of a juvenile court to provide conditions of probation']; . . . § 729.6, subd. (f) [same].)[7] Some conditions, like the requirement the minor attend school, are mandatory absent an express finding that such a condition would be inappropriate. (See . . . § 729.2; Cal. Rules of Court, rule 1493(b).) Other conditions, like one requiring participation in an alcohol or drug education program, are triggered when the minor's misconduct involves specific conduct. (See . . . § 729.10.) In deciding what conditions to place on a juvenile probationer, ' " 'the juvenile court must consider not only the circumstances of the crime, but also the minor's entire social history. . . .' . . . " ' [Citations.]

 "The juvenile court's broad discretion to fashion appropriate conditions of probation is distinguishable from that exercised by an adult court when sentencing an adult offender to probation. Although the goal of both types of probation is the rehabilitation of the offender, '[j]uvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment; it is an ingredient of a final order for the minor's reformation and rehabilitation.' [Citation.] '[J]uvenile probation is not an act of leniency, but is a final order made in the minor's best interest.' (1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 9.52, p. 256.)

"In light of this difference, a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court. [Citations.] ' "Even conditions which infringe on constitutional rights may not be

---

[7]Section 729.1 was amended in 1996; the quoted passage now appears in subdivision (a)(1). Section 729.6 was repealed in 1995.

invalid if tailored specifically to meet the needs of the juvenile [citation]." ' [Citations.]

"In short, conditions of probation for minors are devised by the juvenile court and placed on a juvenile probationer to ensure his or her reformation and rehabilitation. The conditions are deemed necessary for that purpose and no choice is given to the youthful offender. By contrast, an adult offender 'has the right to refuse probation, for its conditions may appear to defendant more onerous than the sentence which might be imposed.' [Citations.]

"Although an adult may choose to reject probation and accept incarceration, no such choice is offered a juvenile offender. It would be inconsistent with the juvenile court's determination of the best manner in which to facilitate rehabilitation of a minor if he could, for example, elect to forgo home placement on probation and instead choose detention at the California Youth Authority. In light of this difference between adult and juvenile offenders, we agree with the views expressed by the Courts of Appeal that have addressed this issue ([citations]; *In re Wayne J.* (1979) 97 Cal.App.3d 776, 780 [159 Cal.Rptr. 106]; see also 1 Cal. Juvenile Court Practice, *supra*, § 9.52, p. 255; [citations]), and conclude that, unlike an adult, a juvenile cannot refuse a grant of probation." (*In re Tyrell J.* (1994) 8 Cal.4th 68, 81-83 [32 Cal.Rptr.2d 33, 876 P.2d 519], fn. omitted.) *Tyrell* noted, however, that "[a] minor can, of course, object to particular conditions of probation as improper or unwarranted. [Citations.]" (*Id.* at p. 83, fn. 3.)

In *In re Wayne J.* (1979) 97 Cal.App.3d 776, 780-783 [159 Cal.Rptr. 106], we held a delinquent ward cannot refuse probation even where the offense which led to his wardship (in that case, like ours, possession of less than an ounce of marijuana) is one where the maximum penalty is a fine, and where the ward cannot be confined. We did not state whether the court imposed the maximum fine (in *Wayne J.*, $100), noting only that Wayne J. was "placed on home probation on terms and conditions wholly appropriate to a minor." (*Id.* at p. 780.) Citing *Wayne J.*, a well-known treatise states "[a] minor may not refuse probation, even if the offense charged is one for which no confinement could be imposed (*e.g.*, possession of less than one ounce of marijuana . . . . [Citation.]" (1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 9.52, p. 255.)

▆▆▆ Thus, the trial court properly placed Francisco on probation, although his offense was one carrying no confinement time. Francisco did not object to any of the probationary conditions when they were imposed.

Here, we must reconcile two competing principles, each a correct legal statement when analyzed alone, but which appear to contradict each other

under our facts. The first principle is that the juvenile delinquency court, like all other courts, can enforce compliance with its orders through exercise of its contempt powers. "Any willful disobedience or interference with any lawful order of the juvenile court or of a judge or referee thereof constitutes a contempt of court." (§ 213.) "While no case has yet construed the scope of this section, the penalties for violation of section 213 are apparently those set forth in Code of Civil Procedure section 1218 for contempts generally: a fine of up to $1,000, imprisonment of up to five days, or both." (*In re Michael G.* (1988) 44 Cal.3d 283, 289, fn. 3 [243 Cal.Rptr. 224, 747 P.2d 1152].) *Michael G.* "conclude[d] that a juvenile court retains the authority, pursuant to its contempt power, to order the secure, non-school-hours confinement of a contemptuous *section 601* ward." (*Id.* at p. 287, italics added.) The court did so although section 601 wards, subject to juvenile court jurisdiction because of noncriminal truancy or disobedience, cannot be confined in secure facilities for their truancy or disobedience. We discuss *Michael G.* in greater detail below.

The second, competing principle is that a delinquent, section 602 ward, subject to juvenile court jurisdiction because he committed acts which would be crimes if committed by an adult, may not be confined for a period longer than the maximum period of punishment which may be imposed on an adult who violates the same criminal statute. ". . . In any case in which the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. [¶] . . . [¶] If the charged offense is a misdemeanor or a felony not included within the scope of Section 1170 of the Penal Code, the 'maximum term of imprisonment' is the longest term of imprisonment prescribed by law. [¶] 'Physical confinement' means placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or in any institution operated by the Youth Authority." (§ 726.)

Here, Francisco S. was a delinquent ward under section 602 for a single instance of conduct for which an adult cannot be incarcerated, and for which the maximum penalty is a $250 fine. We emphasize that the conduct for which Francisco S. was held in contempt was not, for example, a failure to appear in court as ordered, or a direct contempt, such as using profanities in court. Rather, he was held in contempt for the same conduct for which the People filed a supplemental section 777 petition, that is, violating the terms of his probation. Unlike Francisco, for example, a minor held in direct

contempt is punished not for conduct related to his original offense, but for separate, unrelated misconduct.

In *In re Michael G.*, *supra*, 44 Cal.3d 283, the Supreme Court began by noting that specific statutes prohibited confinement of status offenders such as Michael, who was a juvenile court ward under section 601 for truancy. As in our case, Michael was confined for contempt for failing to comply with his probationary conditions such as refraining from truancy and following through with his mandatory school program. In deciding whether Michael could be so confined despite the statutes prohibiting confinement for section 601 status wards, the court extensively reviewed applicable legislative history, noting that the Legislature had created certain limited exceptions to the confinement ban, such as permitting confinement while authorities check for warrants and find and notify the minor's parents. The court concluded that the statutory scheme contemplated limited confinement to assure control over section 601 status offenders and assure compliance with programs designed to reform the minor. The Supreme Court imposed a requirement that before imposing limited confinement for contempt, the juvenile court had to find that lesser alternatives had been ineffective, and that the confinement would further the minor's rehabilitation. The court also required that such confinement must be in separate facilities from those housing delinquent section 602 wards, to avoid further undermining the rehabilitation of a section 601 status ward. Finally, the court noted that the Legislature could set limits on a court's contempt power, but to eliminate it altogether might raise separation of powers issues.

Our situation is distinguishable from that addressed by *In re Michael G.*, *supra*, 44 Cal.3d 283. Here, unlike a section 601 status ward, the Legislature has set a maximum punishment without confinement time for the offense that led to Francisco's section 602 delinquency wardship. There are no statutory exceptions providing for limited confinement. The legislative command is unequivocal: no delinquent section 602 ward may be confined for a time longer than that for which an adult could be incarcerated for committing the same offense. For Francisco's offense, the Legislature chose to prohibit any confinement, without exception.

*Michael G.* noted that earlier cases, and the Legislature through statutory changes, prohibited an earlier practice in which a section 601 ward, who could not be confined, would be placed on probation. If the status ward then violated his probationary terms, the prosecution would file a supplemental section 602 delinquency petition charging criminal contempt (Pen. Code, § 166), a misdemeanor. Once the supplemental petition was found true, the former section 601 status ward now found himself a section 602 delinquent

ward, who could be confined, for conduct that only involved status violations. The earlier cases, approved by *Michael G.*, prohibited such " 'bootstrapping[.]' " (*In re Michael G., supra*, 44 Cal.3d at p. 292, quoting *In re Ronald S.* (1977) 69 Cal.App.3d 866, 874 [138 Cal.Rptr. 387].) Later in the same paragraph, *Michael G.* also approved *In re Mary D.* (1979) 95 Cal.App.3d 34 [156 Cal.Rptr. 829], which *Michael G.* noted "follow[ed] *Ronald S.* on different facts[.]" (*In re Michael G., supra*, 44 Cal.3d at p. 292.) The Supreme Court discussed these cases as part of its review of the statutes which prohibited confinement of section 601 status wards. The court found the limited statutory exceptions to the ban on such confinement came a year after *Ronald S.*, the holding of which the Legislature thereby preserved. In light of those exceptions, *Michael G.* held the earlier cases did not preclude use of the juvenile court's section 213 contempt power to enforce probationary conditions on section 601 status wards. (44 Cal.3d at pp. 292-295.)

*In re Ronald S., supra*, 69 Cal.App.3d 866, extensively reviewed the history of juvenile law until 1977, and prohibited the practice described in the preceding paragraph. Relying on *Ronald S.*, *In re Mary D., supra*, 95 Cal.App.3d 34 went farther. There, the minor was declared a delinquent section 602 ward based on committing misdemeanor vandalism (Pen. Code, § 594), carrying a maximum confinement time of six months, and placed on probation. When she violated a term of probation by conduct that otherwise did not constitute a crime, a supplemental petition alleging criminal contempt with a maximum six-month penalty (Pen. Code, § 166) was found true. The trial court ordered the minor confined for six months for the contempt. The *Mary D.* court reversed, holding that the minor could have been confined for a probation violation for up to six months on the vandalism. However, additional confinement time could not be added for noncriminal conduct by dressing it up as a criminal contempt. To do so would elevate section 601 conduct into section 602 status and would be "a different aspect of the same bootstrapping technique, one which appears to us to be subject to similar criticism." (95 Cal.App.3d at p. 38.)

Later, *In re Ricardo A.* (1995) 32 Cal.App.4th 1190 [38 Cal.Rptr.2d 586] held that a delinquent section 602 ward could not be found in criminal misdemeanor contempt (Pen. Code, § 166) for violations of probation. Rather, such violations could be alleged as contempts only under section 213, the specific juvenile court contempt section used in our case. The court followed *Mary D.*, noting that, in 1986, the Legislature amended the juvenile court law to "generally require[] a supplemental petition under section 777 to revoke probation. Courts have rejected the use of contempt proceedings and other devices to evade the requirements of section 777. [Citations.]" (32 Cal.App.4th at p. 1197.) However, the court refused to follow a case which

held that an adult probationer could not be held in contempt for probation violations, because of "the significant differences between the adult probation system and the juvenile probation system[.]" (*Id* at p. 1200.)

In our case, the juvenile court did not evade section 777. Instead, it held sequential hearings under that section and section 213, and found Francisco in violation of both sections. However, *Mary D.* and *Ricardo A.* support our analysis. Like our situation, both cases dealt with delinquent section 602 wards. Both held that probation violations could not be charged as criminal contempts under Penal Code section 166 in order to lengthen the maximum confinement time. In our case, the juvenile court, although using section 213 rather than Penal Code section 166, elevated probation violations into contempts to impose additional confinement time beyond that available if the probation violations were tried only under section 777. As the probation officer noted, Francisco could not be confined for his violations of probation. The juvenile court improperly evaded that legal prohibition by calling the probation violations contempts.

We recognize the problem our holding creates for a juvenile court faced with a delinquent ward in Francisco's situation. The court was trying to rehabilitate Francisco by giving him a stiff consequence, confinement, to turn him back toward reform. "If the juvenile court is to be saddled with the responsibility for [such offenders], it must also be afforded the tools and authorities to handle those cases. Courts must have coercive authority or they cease being courts. A judge does not suggest to a defendant that he go to prison, he sentences him to prison. A judge does not ask a parent to support his child, he orders him to do so. When a judge gives a money judgment or other relief to a litigant, procedures exist for the enforcement of that judgment. It is simply not fair to a juvenile court judge to whom the community looks for help to so restrict him that he cannot put his orders or decisions into effect. Certainly not all [such offenders] need to be placed in secure facilities. However, some do and in these cases the juvenile court judge must have the authority to detain in a secure facility—if [such offenders] are to remain in the juvenile court." (*In re Ronald S., supra,* 69 Cal.App.3d at p. 875.)

Likewise, we appreciate the inconsistency inherent in a scheme permitting contempt-based confinement for section 601 status wards, who cannot otherwise be confined, but denying the same confinement for section 602 delinquent wards like Francisco whose offenses carry no confinement time. However, in the narrow context presented by this case, i.e., where a section 602 ward cannot be confined at all because his offense permits no confinement, we hold the Legislature's absolute prohibition against confining a

delinquent ward for a longer time than permitted for an adult prohibits imposing confinement for contempt based on violations of probationary conditions.

Upholding the imposition of contempt-based confinement here would impermissibly permit the court to "bootstrap[]" a nonconfinement wardship into one where confinement time is permitted. (*In re Michael G.*, *supra*, 44 Cal.3d at p. 302 (dis. opn. of Broussard, J.); cf. *id.* at pp. 292-293.)

## DISPOSITION

We issue the writ. We remand the case to the juvenile court for it to revoke its order imposing juvenile hall confinement time for contempt.

Vogel (Miriam A.), J., and Mallano, J., concurred.