[No. D060589. Fourth Dist., Div. One. Oct. 2, 2012.]

L.A. et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Randy Mize, Chief Deputy Public Defender, and David Lamb, Deputy Public Defender, for Petitioners.

No appearance for Respondent.

Bonnie M. Dumanis, District Attorney, Laura Tanney and Linh Y. Lam, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**BENKE, Acting P. J.**—In this habeas corpus proceeding two minors argue the juvenile court unlawfully committed them to juvenile hall during school hours after unsuccessfully attempting to obtain their compliance with its orders that they attend school. Although because neither minor is still in custody, habeas corpus relief is not available, we will treat their joint petition as a petition for a writ of mandate. We do so because both minors are still subject to the jurisdiction of the juvenile court, it does not appear the truancy problems which give rise to the orders they challenge have been resolved and thus it will be of some assistance to the juvenile court and the parties if we reach the merits of the minors' claims.

We deny relief with respect to one of the minors and grant it in part with respect to the other minor with instructions the juvenile court make the findings required by the court's holding in *In re Michael G.* (1988) 44 Cal.3d 283, 297–298 [243 Cal.Rptr. 224, 747 P.2d 1152] (*Michael G.*). In doing so, we agree with the district attorney's contention that in exercising its contempt

power the juvenile court may order a juvenile to be confined in a secure facility during school hours as well as nonschool hours.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *L.A.*

Between March 9, 2010, and September 6, 2011, the People, by way of a petition and proceedings under Welfare and Institutions Code[1] sections 601 and 213, attempted to get petitioner L.A. to attend school. At the time the People filed their petition, L.A. was 12 years old and according to the petition had six or more absences from school.

In response to the petition, L.A. admitted the allegations of the petition and the juvenile court ordered she attend school, obey school rules, maintain passing grades and satisfactory citizenship and complete 20 hours of community service. L.A. did not obey the trial court's order and on August 24, 2010, the juvenile court found her in contempt. The juvenile court imposed 12 days of custody as punishment for the contempt, which it found egregious. The juvenile court further found that alternatives to custody were considered and found to be ineffective. The juvenile court stayed all 12 days of the custody and again ordered that L.A. attend school, obey school rules and maintain passing grades and satisfactory citizenship.

At a review hearing on October 19, 2010, the juvenile court was advised L.A. was truant for 23 full days out of a total of 27 possible days of school. In response to the report, the juvenile court lifted the stay with respect to six days of custody; the court ordered that L.A. be segregated by sight and sound from section 602 delinquency wards.

Following L.A.'s release from custody, she went to part of one day of class. Over the following 10 months, notwithstanding the attempts of a social services agency, Turning the Hearts Center, L.A. refused to attend school. She was provided mental health services, but failed to cooperate with the mental health providers. She was placed in custody again on three additional occasions.

On September 6, 2011, when the juvenile court was advised at a truancy review hearing that L.A. had not reenrolled in school, the juvenile court lifted the stay with respect to three days of custody it had previously ordered and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

stayed. L.A. challenged the order by way of the instant petition for a writ of habeas corpus.

### 2. *Michael M.*

Between February 28, 2011, and September 6, 2011, the People, by way of a petition and proceedings under sections 601 and 213, made a similar attempt to get petitioner Michael M. to attend school and obey school rules. At the time the People's petition was filed, Michael was 15 years old.

On May 10, 2011, Michael admitted the truancy allegations of the People's petition.

At a disposition hearing on June 7, 2011, the juvenile court received records which showed that Michael had received 50 referrals in the previous two years for defiance, disruption, truancy, tardiness, stealing, conflict and suspension from school. The court also received a report which showed that following his admission of truancy, Michael had thereafter been truant for six full days out of a possible 17 days of school.

At the disposition hearing, Michael was placed on probation and ordered to attend school, obey school rules, and maintain passing grades and satisfactory citizenship. He was also ordered to participate in counseling or an education program.

Because Michael had continued to misbehave in school and had been truant an additional seven days, on September 6, 2011, the juvenile court found that Michael was in contempt and ordered that he be held in custody for three days in a secure facility, segregated from section 602 delinquent wards. Michael joined in L.A.'s petition.

I

The first issue we confront is whether, in light of the fact both petitioners are no longer in custody, habeas corpus relief is available.

■ Our courts have no power to provide habeas corpus relief to a person who is not in actual or constructive custody. (*People v. Villa* (2009) 45 Cal.4th 1063, 1069 [90 Cal.Rptr.3d 344, 202 P.3d 427]; *In re Wessley* W. (1981) 125 Cal.App.3d 240, 246 [181 Cal.Rptr. 401]; Pen. Code, § 1473, subd. (a).) L.A. and Michael are no longer in actual custody and the status proceedings still pending in the juvenile court do not bring them into constructive custody.

Although L.A. and Michael are subject to further orders of the juvenile court, the juvenile court's continuing jurisdiction over them is not punitive and in general limits the court's power to noncustodial remedies. (§§ 207, 601, subd. (b).) Status wards are subject to custodial restraint only when the juvenile court exercises its fundamental contempt power over them and then only in discrete and limited circumstances. (See *Michael G., supra*, 44 Cal.3d at pp. 294–296.) In short, the juveniles are not subject to further incarceration by virtue of the pending section 601 proceedings and for that reason it cannot be said those pending proceedings by themselves constitute constructive custody. (See *In re Wessley W., supra*, 125 Cal.App.3d at p. 246.)

Although the juveniles are no longer subject to actual or constructive restraint and therefore may not seek habeas corpus relief, they are nonetheless still subject to the juvenile court's jurisdiction under section 601 and the record indicates their difficulties in complying with the requirement they attend school have not been resolved. Moreover, resolution of the issues they have raised will no doubt assist the juvenile court and the parties in the event further intervention by the juvenile court is necessary. Accordingly, we will treat their joint petition as a petition for a writ of mandate. (See *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 511 [46 Cal.Rptr.3d 408].)

II

L.A.'s and Michael's contentions are governed by the holding and reasoning of the court in *Michael G.* In *Michael G.* the petitioner was truant and found to be a ward under section 601, subdivision (b). He thereafter failed to obey the juvenile court's orders, was found in contempt and ordered confined in a juvenile facility. He challenged his confinement on the grounds it was barred by the provisions of sections 207 and 601, subdivision (b), which by their terms prevent juvenile courts from incarcerating juveniles who are wards under section 601. With narrow exceptions, section 207, subdivision (a) prevents incarceration of section 601 wards in secure facilities; section 601, subdivision (b) prevents juvenile courts from removing section 601 wards from the custody of their parents except "during school hours."[2]

The court in *Michael G.* found the custody limitations set forth in sections 207, subdivision (a) and 601, subdivision (b) were not intended to

---

[2] Section 207 states: "(a) No minor shall be detained in any jail, lockup, juvenile hall, or other secure facility who is taken into custody solely upon the ground that he or she is a person described by Section 601 or adjudged to be such or made a ward of the juvenile court solely upon that ground, except as provided in subdivision (b). If any such minor, other than a minor described in subdivision (b), is detained, he or she shall be detained in a sheltered-care facility or crisis resolution home as provided for in Section 654, or in a nonsecure facility provided for in subdivision (a), (b), (c), or (d) of Section 727.

limit a juvenile court's power to punish a contempt under section 213.[3] "Viewing the statutory scheme as a whole, we thus conclude that while the legislative history demonstrates an intent to prohibit the juvenile court from relying on a ward's violation of a court order as a justification for elevating a section 601 ward to a delinquent [citation], there is nothing in that history which specifically indicates that the Legislature intended to prohibit a juvenile court from enforcing obedience to a court order through a contempt sanction that does not alter the status of the ward. Moreover, the Legislature's failure to expressly mention section 213 in either section 601, subdivision (b) or 207, or to amend section 213 itself, provides some evidence that it did not intend the secure detention ban or the school hours limitation to affect the

---

"(b) A minor taken into custody upon the ground that he or she is a person described in Section 601, or adjudged to be a ward of the juvenile court solely upon that ground, may be held in a secure facility, other than a facility in which adults are held in secure custody, in any of the following circumstances:

"(1) For up to 12 hours after having been taken into custody for the purpose of determining if there are any outstanding wants, warrants, or holds against the minor in cases where the arresting officer or probation officer has cause to believe that the wants, warrants, or holds exist.

"(2) For up to 24 hours after having been taken into custody, in order to locate the minor's parent or guardian as soon as possible and to arrange the return of the minor to his or her parent or guardian, with the exception of an out-of-state runaway who is being held pursuant to the Interstate Compact for Juveniles.

"(c) Any minor detained in juvenile hall pursuant to subdivision (b) may not be permitted to come or remain in contact with any person detained on the basis that he or she has been taken into custody upon the ground that he or she is a person described in Section 602 or adjudged to be such or made a ward of the juvenile court upon that ground.

"(d) Minors detained in juvenile hall pursuant to Sections 601 and 602 may be held in the same facility provided they are not permitted to come or remain in contact within that facility.

"(e) Every county shall keep a record of each minor detained under subdivision (b), the place and length of time of the detention, and the reasons why the detention was necessary. Every county shall report this information to the Board of Corrections on a monthly basis, on forms to be provided by that agency.

"The board shall not disclose the name of the detainee, or any personally identifying information contained in reports sent to the Youth Authority under this subdivision."

Section 601, subdivision (b) states: "If a minor has four or more truancies within one school year as defined in Section 48260 of the Education Code or a school attendance review board or probation officer determines that the available public and private services are insufficient or inappropriate to correct the habitual truancy of the minor, or to correct the minor's persistent or habitual refusal to obey the reasonable and proper orders or directions of school authorities, or if the minor fails to respond to directives of a school attendance review board or probation officer or to services provided, the minor is then within the jurisdiction of the juvenile court which may adjudge the minor to be a ward of the court. However, it is the intent of the Legislature that no minor who is adjudged a ward of the court pursuant solely to this subdivision shall be removed from the custody of the parent or guardian except during school hours."

[3] Section 213 states: "Any willful disobedience or interference with any lawful order of the juvenile court or of a judge or referee thereof constitutes a contempt of court."

scope of the juvenile court's contempt powers." (*Michael G. supra*, 44 Cal.3d at pp. 294–295, fn. omitted.)

In narrowly construing the secure detention ban and the school hours limitation, the court expressly avoided the question of whether in enacting those limitations the Legislature improperly interfered with the court's inherent power to punish contempt. (*Michael G., supra*, 44 Cal.3d at p. 295.) In a footnote that is pertinent here, the court noted that such interference would arise if the Legislature imposed a limitation that left the courts with wholly inadequate remedies. (*Id.* at p. 295, fn. 10.) The court stated: "It is arguable that without the ability to order the secure, nonschool hours detention of a contemptuous status offender, a court's remaining sanctions are 'wholly inadequate' to achieve the purpose underlying the contempt power. Under sections 207 and 601, subdivision (b), the juvenile court could punish a contemptuous minor by, among other things, ordering him or her detained in a nonsecure facility during school hours, to pay a fine, or to perform community work. However, the recalcitrant ward could refuse those directives with impunity since without the power to order secure confinement, the juvenile court's effective options would then be exhausted. As the Court of Appeal observed below, '[i]t is difficult to equate this result with punishment. In our view, such a constraint upon the court's power to punish for contempt would completely undermine the dignity and authority of the court, [and] make the court a laughing stock in the eyes of the very persons it is charged with the duty to supervise and control . . . .' [¶] As stated above, however, we need not reach this question because we find the Legislature has not circumscribed the juvenile court's contempt powers by its enactment of sections 207 and 601, subdivision (b)." (*Ibid.*)

Although the court in *Michael G.* found juvenile courts retained the power to incarcerate truants as a means of obtaining compliance with its orders, it found this power was itself subject to important limitations. " '[W]e determine that a status offender may be found in contempt and incarcerated, but with the following limitations: (1) the juvenile is given sufficient notice to comply with the order and understands its provisions; (2) the violation of the court order is egregious; (3) less restrictive alternatives were considered and found to be ineffective; and (4) special confinement conditions are arranged consistent with . . . [the statutory provisions barring intermingling with delinquents].' " (*Michael G., supra*, 44 Cal.3d at p. 297.)

Significantly, for our purposes the court also required that a juvenile court memorialize its findings on the record. (*Michael G., supra*, 44 Cal.3d at p. 298.) The court did so in order to "ensure the court is aware that, by ordering the secure confinement of a juvenile who has not committed a criminal offense, it is taking the extraordinary step of acting contrary to the

wishes of the Legislature but is justified in doing so because it is convinced there is no other alternative which will adequately serve the purpose of the contempt citation." (*Ibid.*)

## III

L.A. and Michael argue that notwithstanding the power to punish for contempt recognized in *Michael G.*, section 601, subdivision (b) nonetheless prevented the juvenile court from ordering they be held in custody at juvenile hall during school hours. We find no such limitation on the juvenile court's contempt powers.

The goal of section 601 and related provisions of the Education Code is not to punish truants, but to promote their attendance in school. (See *In re Humberto O.* (2000) 80 Cal.App.4th 237, 242 [95 Cal.Rptr.2d 248] [interpreting the arrest power provided by Ed. Code, § 48264].) However, where, as here, a juvenile is manifestly unwilling to comply with the juvenile court's orders, *Michael G.* permits a court to order custody during both *nonschool* and *school* hours.

■ We note the petitioners appear to misinterpret the express language of section 601, subdivision (b). Section 601, subdivision (b) does not, by its terms, prevent a court from taking custody away from parents during school hours. Rather, it only prevents a court from taking custody during *nonschool* hours. Thus, the plain language of section 601 in fact *permits* a juvenile court to interfere with a parent's custodial rights during school hours.

In *Michael G.* the petitioner relied on section 601, subdivision (b)'s express limitation on a juvenile court's powers during nonschool hours. Because the statutory limitation is only on a juvenile court's power during nonschool hours, the express holding of *Michael G.* is itself limited to a court's power during nonschool hours. (See *Michael G., supra*, 44 Cal.3d at p. 296.) However, that limitation on the holding in *Michael G.* does not create any inference a juvenile court's contempt power during school hours is in any way diminished. Indeed, the clear implication of the statute is that during school hours a *parent's* rights are diminished, not the court's. Thus, if the juvenile court's contempt powers during nonschool hours supersede a parent's custodial rights, when those rights are expressly protected by the terms of section 601, subdivision (b), logic would suggest the court's contempt powers also supersede a parent's more limited rights during school hours.

Our conclusion the juvenile court's contempt powers over a juvenile during school hours are as great as its powers during nonschool hours is consistent with the reasoning of the court in *Michael G.* "Given the fundamental nature

of the contempt power . . . , we should not presume the Legislature intended to override such long-established power 'unless such intention is made clearly to appear either by express declaration or by necessary implication [citation].' [Citation.]" (*Michael G., supra*, 44 Cal.3d at p. 294, citation omitted.) Finding no such clear intention, the court concluded the Legislature did not intend to restrict a juvenile court's power to enforce its contempt powers by placing a juvenile in a secure facility or to do so during nonschool hours. (*Ibid.*) Since *Michael G.* was decided, we are unaware of any action by the Legislature which would suggest that it now intends any limitation on a juvenile court's contempt powers. Thus if, when *Michael G.* was decided, there was no intention to restrict a juvenile court's contempt power during nonschool hours, we are in no position to find such an intention during school hours.

In this regard, like the court in *Michael G.*, we also note the constitutional implications of finding a limitation on a juvenile court's contempt powers during school hours. (See *Michael G., supra*, 44 Cal.3d at p. 295, fn. 10.) Compelling the court to release a juvenile during school hours when the juvenile has *egregiously* disobeyed its orders to attend school would plainly undermine the dignity and authority of the court to the same or to a greater degree as a limitation on its power to incarcerate the juvenile during nonschool hours.

In sum, where the conditions required by *Michael G.* exist, a juvenile court may order a juvenile into secure custody during both school and nonschool hours.

IV

With respect to L.A., the record here plainly meets the requirements of *Michael G.* She was given repeated and ample notice of the juvenile court's orders and understood them; her repeated violations were egregious; the record reflects the court considered a number of alternatives before ordering her placed in custody; special confinement conditions were arranged; and the juvenile court made express findings with respect to the egregious nature of her violations and the alternatives it considered. Thus the record does not support L.A.'s request for relief.

Although arguably the record here shows that Michael's conduct also justified incarceration, the district attorney concedes the juvenile court did not memorialize its findings. Thus, we must grant the petition with respect to Michael and direct that the juvenile court make findings with respect to its order finding him in contempt.

## DISPOSITION

Let a peremptory writ of mandate issue directing the juvenile court to make findings, as required by *Michael G.*, with respect to its September 6, 2011 order finding Michael in contempt. In all other respects, the petition is denied.

Huffman, J., and Irion, J., concurred.